IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

*Norfolk Division*

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) CRIMINAL NO. 2:23-cr-76 |
| | ) |
| ALI SCOTT, JR., | ) |
| | ) |
| Defendant. | ) |
| | ) |

**POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING**

The United States of America, through its attorneys, Jessica D. Aber, United States Attorney, and Kevin M. Comstock, Assistant United States Attorney and Marc W. West, Special Assistant United States Attorney, now submits its position with respect to the defendant's sentencing factors.

**I.     The Presentence Report**.

In the Presentence Investigation Report (PSR) prepared in this matter, the U.S. Probation Office determined the applicable advisory guidelines range to be a term of 70-87 months' imprisonment, based on a Total Offense Level of 25 and a Criminal History Category of III.  Three points were subtracted due to the defendant's acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a).  For the two offenses of conviction, he faces a maximum sentence of 35 years (420 months) imprisonment.

In accordance with §6A1.2 of the Sentencing Guidelines Manual and this Court's policy regarding sentencing, the United States represents that it has reviewed the PSR and consulted with the Probation Office and defense counsel.  The United States does not dispute any of the sentencing factors set forth in the PSR or the guidelines range calculation

and understands neither does the defendant dispute any of the sentencing factors set forth in the PSR. ECF No. 41.

**II.     Motion for an Additional Point for Acceptance.**

The United States moves this Court, pursuant to U.S.S.G. §3E1.1(b), to grant a one-level reduction in the defendant's offense level for acceptance of responsibility. The defendant timely notified the United States of his intention to enter a plea of guilty, thereby allowing the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources efficiently.

**III.    Procedural Background.**

Ali L. Scott, Jr., the defendant, was named in a two-count Criminal Information filed by the United States Attorney's Office in the Eastern District of Virginia, Norfolk Division, on June 13, 2023. Count One charges the defendant with Possession with Intent to Distribute a Controlled Substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), on or about November 10, 2022. Count Two charges the defendant with Convicted Felon in Possession of Firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8), on or about November 10, 2022. The defendant is also cited with forfeiture pursuant 18 U.S.C. § 924(d) and 21 U.S.C. § 853.

On June 23, 2023, in accordance with the terms of a written Plea Agreement, the defendant appeared before The Honorable Douglas E. Miller and pled guilty to the two-count Criminal Information. At that time, the defendant's plea was accepted and the Court continued the sentencing before The Honorable John A. Gibney, Jr., pending the completion of a presentence report. In addition to the standard Plea Agreement, the defendant will plead guilty because the defendant is in fact guilty of the charged offense.

The defendant admitted the facts set forth in the Statement of Facts filed with this Plea Agreement and agreed that those facts establish guilt of the offenses charged beyond a reasonable doubt. The Statement of Facts were incorporated into this Plea Agreement and constitute a stipulation of facts for purposes of Section 1B1.2(c) of the Sentencing Guidelines. The United States agreed it would not file an information with the Court, pursuant to 21 U.S.C. § 851, stating the defendant has a prior conviction for a felony drug offense.

### IV.  Legal Standard on Sentencing.

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court rendered the Sentencing Guidelines advisory, but emphasized that a sentencing court must consider both the Guidelines and the 18 U.S.C. § 3553(a) factors when making a sentencing decision. *Id.* at 264. The Supreme Court reaffirmed this principle in *United States v. Kimbrough*, 552 S. Ct. 85 (2007), emphasizing that "the Guidelines, formerly mandatory, now serve as one factor among several courts must consider in determining an appropriate sentence." *Id.* at 564.

Further, in *Gall v. United States*, 128 S. Ct. 586 (2007), the Supreme Court instructed that the sentencing court should calculate the Sentencing Guideline range, permit the government and the defendant "an opportunity to argue for whatever sentence they deem appropriate," consider all of the § 3553(a) factors, and finally pronounce a sentence considering all of the relevant factors. *Id.* at 596-97. The *Gall* Court further instructed that, in the event that the sentencing court decides to impose a variance sentence, the court "must consider the extent of the deviation and ensure that the justification is sufficiently

compelling to support the degree of the variance." *Id.* (noting that a "major departure should be supported by a more significant justification than a minor one.").

"[I]n imposing a sentence after *Booker*, the district court must engage in a multi-step process. First, the court must correctly determine, after making appropriate findings of fact, the applicable guideline range." *United States v. Moreland*, 437 F.3d 424, 432 (4th Cir. 2006). "Next, the court must 'determine whether a sentence within that range serves the factors set forth in § 3553(a) and, if not, select a sentence [within statutory limits] that does serve those factors.'" *Id.* (quoting *United States v. Green*, 436 F.3d 449, 455 (4th Cir. 2006)). In making this determination:

> a sentencing court must consider "the nature and circumstances of the offense and the history and characteristics of the defendant" and the need "to reflect the seriousness of the offense," provide "just punishment," "afford adequate deterrence," "protect the public," and "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

*United States v. Hampton*, 441 F.3d 284, 287 (4th Cir. 2006) (quoting 18 U.S.C. § 3553(a)).

Applying these standards, the Fourth Circuit has concluded that a sentencing court must: "(1) properly calculate the Guideline range; (2) allow the parties to argue for the sentence they deem appropriate and determine whether the § 3553(a) factors support the sentences requested by the parties; and (3) explain its reasons for selecting a sentence." *United States v. Simmons*, 269 Fed. Appx. 272 at *1 (4th Cir. 2008) (*citing United States v. Pauley*, 511 F.3d 468, 473 (4th Cir. 2007)).

In determining the sentence to impose within the guidelines, or whether a departure from the guidelines is warranted, the court may consider, without limitation, any information concerning the background, character, and conduct of the defendant, unless otherwise prohibited by law. U.S.S.G. §1B1.4, 18 U.S.C. § 3661; *United States v. Vitrano*,

4

495 F.3d 387 (7th Cir. 2007) (noting that, under 18 U.S.C. § 3661, the court may rely on information that is not included in "relevant conduct" under guideline §1B1.3.), 21 U.S.C. § 850 (same language as § 3661.).

Importantly, the Supreme Court has recognized that a party's argument for a sentence outside the calculated guideline range may "take either of two forms." *Rita v. United States,* 551 U.S. 338, 344, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007). A party may "argue within the Guidelines' framework, for a departure," *Id*. (emphasis in original), or a party may "argue that independent of the Guidelines, application of the factors set forth in 18 U.S.C. § 3553(a) warrants a [different variant] sentence." *Id*. *See*, *United States v. Blue*, 877 F.3d 513, 517-18 (4th Cir. 2017) (after calculating the guidelines, each side may argue for whatever sentence they deem appropriate and the Court "consider[s] those arguments in light of all of the factors stated in 18 U.S.C. § 3553(a).).

## VI.   Analysis of Factors under 18 U.S.C. § 3553(a).

After ruling on the objections (if any) and determining the advisory guideline range, the Court must then look to the 18 U.S.C. § 3553(a) sentencing factors when imposing a sentence.  The Court must consider (1) the nature and circumstances of the offense and the history and characteristics of the defendant, (2) the need for the sentence imposed to promote the goals of sentencing (reflecting the seriousness of the offense, promoting respect for the law, providing just punishment, affording adequate deterrence, protecting the public from the defendant, and the defendant's needs for treatment and training), (3) the kinds of sentences available, (4) the sentencing guideline range established, (5) any pertinent policy statement issued by the Sentencing Commission, (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been

5

found guilty of similar conduct, and (7) the need to provide restitution to any victims of the offense.

For the reasons outlined herein, and after consideration of the PSR, the relevant conduct associated with this crime, the defendant's history and characteristics, the defendant's criminal record, and the applicable sentencing guidelines, the United States recommends a sentence within the established sentencing guidelines, and views that recommendation as accomplishing the goals of 18 U.S.C. § 3553(a).

### A.    Nature and Circumstances of the Offense

The nature and circumstances of the offense, and the evidence agreed to by the defendant as set forth in the PSR and Statement of Facts, are troubling.  PSR ¶ 9 (1-20), ECF No. 27.  While armed with multiple firearms, including one on his person on the day he was arrested, the defendant possessed with intent to distribute Fentanyl mixed with Xylazine (known as the "Zombie" drug) and cocaine.  PSR ¶ 13 n1.

### B.    Defendant's History and Characteristics.

The defendant's history and characteristics include both aggravating and mitigating factors, that when considered with the other sentencing factors, support the United States' recommendation that the Court impose a sentence within the calculated sentencing guidelines.  Such a sentence is sufficient, but not greater than necessary, to accomplish the goals set forth in 18 U.S.C. § 3553(a).

The defendant's personal history is set forth in the presentence report.  PSR ¶¶ 52-83. He has medical issues and a substance abuse problem.  He has not had steady employment and he has a significant criminal record.  PSR ¶¶ 38-45. The United States respectfully recommends that the defendant receive medical care and substance abuse

treatment to address his health and addiction issues while incarcerated. He also needs to develop employment skills while incarcerated.

      C.      **Other Relevant Sentencing Factors in 18 U.S.C. § 3553**

*Reflecting the Seriousness of the Offense*

The defendant was an armed drug dealer with prior felony convictions. There is significant risk that this defendant will continue to be involved in transporting or selling narcotics, and this risk was repeatedly cited by Congress as an example of a danger to the "safety of any other person or the community." Section 3142 Leg. Hist., 1984 U.S.C.C.A.N. at 16, 22–23. And based on "the nature of the criminal activity with which they are charged, they pose a significant risk of [  ] recidivism." See also, *United States v. Williams*, 753 F.2d 329, 335 (4th Cir. 1985). He is a repeat offender with a proven risk of recidivism for serious drug and gun offenses.

This serious drug offense was made even more severe by his possession of firearms in furtherance of his drug trafficking crimes. Factors that this Court may consider in fashioning its sentence for this aggravating circumstance include the following: the type of drug activity that was being conducted, accessibility of the firearm, the type of firearm, whether the firearm was stolen, the status of the possession (whether it was legitimate or illegal), whether the firearm was loaded, the proximity of the firearm to either drugs or drug profits, the time and circumstances under which the firearm was found, whether the firearm provided a defense against the theft of drugs, and/or reduced the probability that such a theft might be attempted. The possession is "in furtherance" if the purpose of the firearm is to protect or embolden the defendant. Distribution of drugs, and the commonsense recognition that drug dealing is a dangerous and violent enterprise, support

an inference that a defendant's possession of a firearm was to facilitate his drug dealing. *United States v. Brockington*, 849 F.2d 872, 876 (4th Cir. 1988), abrogated on other grounds by *Bailey v. United States*, 516 U.S. 137 (1995).

*Promoting Respect for the Law*

The defendant was previously convicted of drug and gun offenses and received lenient sentences. His conduct only escalated this time and became more serious than before.  This time he had more firearms and he sold far more dangerous drugs. The defendant does not respect the law.  A sentence within the calculated sentencing guidelines will increase the chances that he will respect the law.

*Need for Just Punishment*

The defendant was selling a Fentanyl (and a Fentanyl analogue) mixed into dangerous drug cocktails.  Fentanyl and its analogues are highly dangerous and deadly drugs, especially when mixed with *Cocaine* and *Xylazine*. This level of narcotics trafficking is significant and damaging to society, causing destruction in communities and families.  This level of trafficking in highly dangerous and deadly drugs should not be ignored, nor go unpunished, by the Court.

*Deterrence*

As to general deterrence, the public must have confidence that the activities of the defendant are treated with the utmost seriousness. Individuals inclined to consider committing crimes like those of the defendant must be made to pause in thinking about the consequences that may follow.

As to specific deterrence, sufficient punishment must be imposed so that, in the future, no amount of money makes this type of activity worthwhile for this defendant.  The

defendant was poisoning the community by distributing Fentanyl drug trade and must be deterred from this conduct. The past lenient sentences he received in other courts failed to deter him. He is a repeat offender, so there is a significant risk that this defendant will continue to be involved in transporting or selling narcotics, unless this Court imposes a sentence within the calculated sentencing guidelines to specifically deter him. Drug dealing is a crime of greed. Accordingly, the United States submits that the recommended sentence within the calculated sentencing guidelines, is one that will deter the defendant specifically from continuing to participate in the destruction of communities for profit, and is appropriate.

*Need to Protect Society*

Fentanyl is responsible for making overdose deaths one of the leading causes of loss of lives in the United States for persons ages 18 to 49 years old.[1] Fentanyl is killing Americans at an unprecedented rate. It is incredibly dangerous. Only 2 milligrams (2/1000th of a gram) can cause fatal overdoses. The defendant possessed a total of about 43.11 grams of Fentanyl (and mixtures) for distribution. This is an amount that could potentially cause thousands of fatal overdoses in the community.

But if Fentanyl alone was not bad enough, causing a significant wave of deaths, drug dealers like the defendant are now distributing Fentanyl with Xylazine (an animal tranquilizer) mixed into it. Federal officials, and both the DEA and the White's Office of

---

[1] https://www.washingtonpost.com/nation/2022/11/03/fentanyl-opioid-epidemic/ - More people have died of synthetic-opioid overdoses than the number of U.S. military personnel killed during the *Vietnam, Iraq and Afghanistan wars combined*. Fentanyl is now the leading cause of death for Americans ages 18 to 49, according to a Washington Post analysis of death data for 2021 from the Centers for Disease Control and Prevention.

National Control Drug Policy, have declared this a threat to the public. This is because Fentanyl is even worse when mixed with Xylazine, causing that combination (or cocktail) to be dubbed the "Zombie Drug" for its profound impacts on the user. The drugs the defendant was distributing are devastating and destroying communities in Hampton Roads and beyond. He also distributed, and possessed with intent to distribute, cocaine laced with Fentanyl to unsuspecting cocaine users.

All the evidence points to the fact that the chemicals that go into the production of Fentanyl that is brought into the United States are produced, and begin, in the People's Republic of China, with precursor chemicals processed in labs in Mexico, and then smuggled into the United States by two drug Cartels in Mexico; the Sinaloa and Jalisco Cartels.[2] Fentanyl is incredibly profitable for drug dealers as it only takes about $600 worth of fentanyl precursor chemicals to yield a profit of over ½ a million dollars.

Further, the defendant's conduct is aggravated by the fact that he committed this offense multiple times. It wasn't just a one-off occurrence – armed drug dealing was his life. There was no indication the defendant planned on stopping had he not been arrested. The nature and circumstances of the offense clearly demonstrate the recommendation of the government is appropriate. He sold drugs without regard for the individuals in the community, or anyone else. The defendant engaged in conduct which was inherently dangerous and damaging. His conduct was aggravated because he carried a firearm and

---

[2] According to a March 2022 publication of the Brookings Institute, China remains the principal source of Fentanyl and Methamphetamine precursors, finished in Mexico and then shipped to the United States. https://www.brookings.edu/research/china-and-synthetic-drugs-control-fentanyl-methamphetamines-and-precursors/

had multiple firearms at his drug-involved residences.

The recommended sentence within the calculated sentencing guidelines is needed to protect the public, and to give the defendant an opportunity to better himself while in the Bureau of Prisons. The defendant can take advantage of all they have to offer (including recidivist reduction programs under the First Step Act) and hopefully, finally, come to the decision that his criminal ways are over. Let him prove that he can obey the rules in prison and receive the benefit of recidivist reduction programs. These recidivist reduction program credits are his to earn.

*Avoiding Sentencing Disparities*

A sentence within the calculated sentencing guidelines, by definition, will not create a sentencing disparity with other cases. After all, that is in part a purpose of the sentencing guidelines in the first place. The defendant could receive up to 35 total years (420 months) for these offenses. The government is recommending a sentence within the guidelines of 70 to 87 months, or about 15% to 20% of the maximum possible sentence.

*No Limitations on Matters Considered by the Court*

Under 18 U.S.C. § 3661 and 21 U.S.C. § 860, there is no limitation on what a Court may consider when determining an appropriate sentence.

**VII.   Conclusion.**

After considering the guidelines, and taking all the § 3553(a) factors into account, the government submits that a sentence within the calculated sentencing guidelines is appropriate and sufficient, but not greater than necessary, to accomplish the goals of 18 U.S.C. § 3553(a).

Respectfully submitted,

Jessica D. Aber
United States Attorney

By: /s/_____
Kevin M. Comstock
Assistant United States Attorney
Marc W. West
Special Assistant United States Attorney
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, VA 23510
Office Number: 757-441-6338
Facsimile Number: 757-441-6689
Kevin.comstock@usdoj.gov

## Certificate of Service

I certify that on November 15, 2023, I electronically filed a copy of the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to counsel of record. I also certify that on November 15, 2023, I sent by electronic mail a copy of the foregoing to the probation officer.

By: /s/_____
Kevin M. Comstock
Assistant United States Attorney
Marc W. West
Special Assistant United States Attorney
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, VA 23510
Office Number: 757-441-6338
Facsimile Number: 757-441-6689